UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AVANIEL GRISNOLD

      Petitioner,

v.                                Case No. 8:07-cv-1527-T-23TGW

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

Avaniel Grisnold petitions for the writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 (Doc. 1) and challenges the validity of his state convictions for possession of

cocaine with intent to sell and sale of cocaine.  Grisnold alleges several claims of

ineffective assistance of trial counsel.  Numerous exhibits ("Respondent's Exhibit __")

support the response.

## FACTS[1]

Detectives Robert Kirkpatrick and Patty Robinson of the Polk County Sheriff's

Office conducted an undercover drug transaction on January 17, 2003.  Before

beginning the controlled purchase, Det. Robinson viewed a photograph of Grisnold.

Det. Robinson and a confidential informant met Antonio "Twan" Potts, whom Det.

Robinson asked for $20 worth of crack cocaine.  Twan said that he would get some.

Det. Robinson watched Twan walk from her vehicle to a group of men with whom Twan

_____

[1]  This summary of facts derives from the parties' appellate briefs (Respondent's Exhibits 3, 4).

conversed.  Twan signaled Det. Robinson to approach.  A man known to Det. Robinson as "Jimmy" approached her car and asked what she wanted.  Det. Robinson responded "$20 hard."  Jimmy pulled a small pill bottle from his pocket and sold her a piece of a hard white substance for $20.00.  Det. Robinson left the area, returned to Det. Kirkpatrick, and handed him the substance, which a field test showed was cocaine. After the drug transaction, Det. Robinson viewed a photograph of Grisnold and confirmed his identity as Jimmy, the man who sold her the crack cocaine.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

In per curiam decisions without a written opinion, the state appellate court affirmed both Grisnold's convictions and his sentences on direct appeal and affirmed the denial of his subsequent Rule 3.850 motion to vacate.  The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Grisnold bears the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001).  Consequently, this court must defer to the finding of fact in the state court's rejection of Grisnold's post-conviction claims.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Grisnold claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

- 4 -

Strickland requires proof of both deficient performance and consequent prejudice. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Grisnold must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Grisnold must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the

- 5 -

extent that reasonable professional judgments support the limitations on investigation."

466 U.S. at 690-91.  Grisnold cannot meet his burden merely by showing that the

avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.  We ask
> only whether some reasonable lawyer at the trial could have acted, in the
> circumstances, as defense counsel acted at trial . . . .  We are not
> interested in grading lawyers' performances; we are interested in whether
> the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v.

United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial

lawyers, in every case, could have done something more or something different.  So,

omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or

appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v.

Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983)

(counsel has no duty to raise a frivolous claim).

**Ground One**

Grisnold contends that trial counsel rendered ineffective assistance by failing to

convey a plea offer from the prosecutor.  The state post-conviction court rejected this

claim in Grisnold's Rule 3.850 motion after an evidentiary hearing:

> At the evidentiary hearing, trial counsel, James Pyle, testified that during
> the entire course of representing Defendant, he made several attempts to
> convey the State's offer to Defendant, who was never interested in
> hearing about or discussing the State's offer.  Mr. Pyle's notes did not
> indicate a specific date, but he recalled that on at least one occasion he
> told the Defendant he was going to advise him of the terms of the State's
> offer whether he wished to hear them or not, but the Defendant had no
> interest in accepting the offer.  The Defendant testified that although
> someone advised him of the State's proposed Early Resolution at

arraignment, Defendant was not represented by counsel at that time. Defendant also testified that trial counsel never at any time advised him of any offer from the State.

The Court found Mr. Pyle's testimony credible and accepts his testimony as the more reliable. Accordingly, the Court finds that the Defendant has failed to demonstrate any deficiency in Mr. Pyle's representation as to claim 1. Upon an insufficient showing as to the first prong of Strickland, it is unnecessary to address the second prong. See Henry v. State, 862 So. 2d 679, 683 (Fla. 2003). Accordingly, claim 1 is DENIED.

(Respondent's Exhibit 8K, p. 2).

Trial counsel testified at the evidentiary hearing that he repeatedly attempted to discuss the prosecution's plea offers with Grisnold.[2] (Respondent's Exhibit 8I, pp. 35-45) Grisnold testified to the contrary. (Respondent's Exhibit 8J, pp. 116-29) In denying relief on this ineffective assistance claim, the state post-conviction court found counsel's testimony more credible than Grisnold's testimony. The state trial court's credibility determination is presumed correct. See Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" the petitioner's.), cert. denied, 526 U.S. 1047 (1999); Devier v. Zant, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), cert. denied, 513 U.S. 1161 (1995). Relying only upon his unsupported contention, Grisnold fails to overcome the presumption of correctness by clear and convincing evidence.

---

[2] The prosecution initially offered Grisnold an "early resolution" agreement that called for a sentence of either twelve months in the county jail or two years of community control. The prosecution subsequently extended another plea offer of twenty-four months imprisonment followed by one year of probation in exchange for Grisnold's guilty plea. (Respondent's Exhibit 8I, p. 33)

28 U.S.C. § 2254(e)(1).  Grisnold fails to meet his burden of proving that the state court unreasonably applied Strickland or unreasonably determined the facts.

28 U.S.C. § 2254(d).  Ground one warrants no federal habeas relief.

**Ground Two**

Grisnold contends that trial counsel rendered ineffective assistance by failing to adequately question prospective juror Catherine Hilton about her ability to decide Griswold's case based solely on the evidence and about her possible bias in favor of law enforcement witnesses.  Griswold argues that counsel's failure to use a peremptory challenge to strike Hilton resulted in his convictions.

The state post-conviction court rejected this claim in Grisnold's Rule 3.850 motion after an evidentiary hearing:

> The Court record reflects that during voir dire the following colloquy occurred between Catherine Hilton and State Attorney Johnson:

> MS. JOHNSON: [W]e're not here to decide whether or not drugs are wrong or whether or not we disagree with or agree with drugs, but when we hear the evidence from the stand, decide whether or not the defendant made a drug sale . . . . Does anyone have a problem with deciding that issue and putting aside other issues? . . . Okay, Ms. Hilton, did you raise your hand?

> [HILTON]: Yes, I did.

> MS. JOHNSON: What kind of drugs have you seen?

> [HILTON]: Varied kind.  I have a daughter that is on drugs.

> MS. JOHNSON: Okay.

- 8 -

| [HILTON]: | I think that would make it hard. |
| MS. JOHNSON: | Well, quite a few of you said that you could listen to the evidence whether or not - - |
| [HILTON]: | And I'm not sure, you know, whether I could do it. |
| . . . | |
| MS. JOHNSON: | Will you favor the police officer just because he's a police officer? . . . Do you think you can [take each witness] separately and judge their credibility? |
| . . . | |
| [HILTON]: | I'm not sure. |

It is clear from the record and from Mr. Pyle's testimony that he struck a juror who at one point responded he would be biased in favor of law enforcement witnesses but that Mr. Pyle did not make any attempt to strike or challenge juror Hilton, nor did he ask any follow-up questions seeking clarification of her two equivocal responses.  However, even if trial counsel's failure to strike juror Hilton could be classified as deficient, Defendant has failed to meet the second prong of Strickland, prejudice. Applying the standard in Carratelli [v. State, 915 So. 2d 1256 (Fla. 4th DCA 2005)] (cited favorably in State v. Bouchard, 922 So. 2d 424 (Fla. 2d DCA 2006)), in order to satisfy the prejudice prong of Strickland, the Defendant must show that juror Hilton was actually biased against him. See Carratelli, 915 So. 2d at 1260.  However, the Defendant has not shown that juror Hilton's equivocal answers demonstrated that she was prejudiced against him or even that her serving on the jury in any way affected the outcome of the trial.  The Court agrees with the State that the record fails to show that juror Hilton was in fact biased against the Defendant and it would have been appropriate to deny claim 2 without an evidentiary hearing.  Accordingly, the Defendant's claim 2 is DENIED.

(Respondent's Exhibit 8K, pp. 3-4) (court's record citation omitted).

"The purpose of voir dire is to ascertain whether potential jurors can render a verdict solely on the basis of evidence presented and the charge of the trial court."

Wilcox v. Ford, 813 F.2d 1140, 1150 (11th Cir. 1987).  See also J.E.B. v. Ala. ex rel. T.B., 511 U.S. 127, 143-44 (1994) ("Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently."); Mu'Min v. Virginia, 500 U.S. 415, 431 (1991) ("Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges.").  "Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored."  Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981).

Effective assistance of counsel is required during voir dire.  Brown v. Jones, 255 F.3d 1273, 1278-9 (11th Cir. 2001).  However, counsel's questions and tactics during voir dire are a matter of trial strategy.  Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001).  "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995).  Because empaneled jurors are presumed impartial, see Smith v. Phillips, 455 U.S. 209, 215 (1982), Grisnold must show that the juror selection process produced a juror that was actually biased against him to satisfy Strickland's prejudice prong.  Hughes, 258 F.3d at 458.  See also Rogers v. McMullen, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury not violated absent a showing that a jury member hearing the case was actually biased against him).

Grisnold's claim lacks merit.  Despite Hilton's equivocal answers during voir dire, nothing in the record shows that she lacked the ability to be fair and impartial during Grisnold's trial.  Grisnold's assertion that further questioning may have ultimately elicited some evidence of actual bias is purely speculative.  His claim for relief fails because he neither shows actual bias nor establishes that if trial counsel had performed as he now suggests, the jury would have acquitted him.  Strickland, 466 U.S. at 694.  Grisnold fails to establish that the state post-conviction court either unreasonably applied Strickland or unreasonably determined the facts in rejecting this ineffective assistance claim.  See Patton v. Young, 467 U.S. 1025 (1984) (state trial judge's determination of an individual juror's impartiality is entitled to a presumption of correctness on federal habeas review under 28 U.S.C. § 2254(d)).  Ground two warrants no federal habeas relief.

**Ground Three**

Grisnold contends that trial counsel rendered ineffective assistance by failing to file a motion to suppress Grisnold's driver's license photograph.  He argues that the single-photograph identification by Detective Patty Robinson was both unreliable and unduly suggestive and that counsel erroneously failed to object to the photograph's introduction at trial.

Detective Patty Robinson testified on direct examination at trial that she was working on an undercover drug investigation and purchased crack cocaine from a man named "Jimmy," whom she later learned was Grisnold.  She further testified that she confirmed Grisnold's identity from his driver's license photograph:

Q:     Okay.  Now, I'm going to bring you back to January 17th of
       this year, approximately 5:30 in the evening.  Do you recall
       what you were doing at the time, ma'am?

. . .

A:     Yes, ma'am.  I was assisting Detective Kirkpatrick
       doing - - working in an undercover capacity to purchase
       crack cocaine.

Q:     Okay.  And what did you proceed to do in that capacity,
       ma'am?

A:     I drove to the area of St. Paul Drive, which is off of - - at the
       intersection of 540 and Spirit Lake Road.  I drove into the
       [sic] St. Paul Drive, which is a dead-end.  I made contact
       with a person that I had known.  His name was Twan,
       Antonio Potts.  I proceeded to ask him for some rock
       cocaine, 20 hard.[3]  He told me that he did not have any, that
       he would get me some.

. . .

Q:     So what happened next?

. . .

A:     He told me he would get me some.  He walked away from
       my vehicle, remained in my eyesight, walked over to an area
       where other males were standing around a gray Cadillac.
       He made contact with the defendant.  At that time, [he]
       motioned me over with a wave of his hand.  I drove over
       there and he told me that I would - - I could get some.  At
       that time the defendant, Jimmy - - I knew him as Jimmy - -

. . .

A:     I drove over to where Twan motioned for me to come.  Twan
       told me that Jimmy had me some.  At that time, Jimmy,
       which that's his street name, came over to the driver's side
       of my vehicle, asked me what I wanted.  I told him 20, 20

_____

   [3]  Robinson testified that "20 hard" is street slang for crack cocaine.  (Respondent's Exhibit 2,
Vol. III, pp. 22)

hard.  At that time, he pulled a small bottle, which is commonly used for prescriptions, it's the amber color - -

Q:     Okay.  Hold on, ma'am.  When you keep saying he, who are you referring to?

A:     I'm sorry.  It's Jimmy.

Q:     Okay.  And who is Jimmy?

A:     Jimmy is, I'm sorry, the defendant Avaniel Grisnold.

. . .

Q:     Okay.  Now to - - did you ever at any time confirm the defendant's identity during that day, ma'am?

A:     Yes, ma'am.  After the transaction with Jimmy, Jimmy walked back over to the vehicle.  I asked Twan, to confirm, I says [sic] who was that, he said that was Jimmy.  At that time I left the area.

. . .

Q:     At some point, ma'am, did you make sure to identify the defendant by some sort of photograph?

A:     Yes, ma'am.

Q:     Can you tell me about that?

A:     I saw a photograph before and after the transaction.  Before, to get a description of the suspect, and after to confirm that's who I had made contact with.

. . .

Q:     I am showing you what's been marked as State's Exhibit 2. Can you tell me what this is?

A:     Yes, ma'am.  That's the photo that I was showed [sic] to identify the defendant.

- 13 -

> Q:      And you were shown that - - that picture on the day of [the drug transaction], ma'am?
>
> A:      Yes, ma'am.
>
> Q:      Is that picture an accurate description of how the defendant looked on [the day of the drug transaction]?
>
> A:      Yes, ma'am.

(Respondent's Exhibit 2, Vol. III, pp. 22-27)  The trial judge admitted the photograph into evidence without objection from Grisnold.  Detective Robinson testified on redirect examination that she had received training in identification through the police academy and that no doubt existed in her mind that Grisnold was the person who sold her the cocaine.  (Respondent's Exhibit 2, Vol. III, pp. 38-39)  Grisnold testified on direct examination that the admitted photograph was his driver's license photograph and that "someone could confirm [his] identity by looking at that photograph."  (Respondent's Exhibit 2, Vol. III, p. 60)

In its order denying relief on this claim in Grisnold's Rule 3.850 motion (Respondent's Exhibit 8F, p. 1), the state post-conviction court relied upon the State's response to Grisnold's Rule 3.850 motion, adopting the response to this claim in its entirety.  The State argued:

> The Defendant's third claim of error is that trial counsel failed to move to suppress the Defendant's driver's license photograph, did not object to its introduction at trial, and did not object to the in-court identification by Detective Robinson as "unduly suggestive."  The Defendant bases his objection to the photo itself on the manner in which the Defendant's driver's license came into police possession.  He bases his final claim on the use of a single photograph to assist the detective in her identification. All of these claims lack merit and this Honorable Court should summarily deny them as refuted by the record and facially insufficient at law.

The Defendant first complains that his driver's license should not have been in police custody in the first place.  He opines that because the license was not immediately forwarded to the state motor vehicles department for disposition, that the information it contained should have been suppressed below.  But the Defendant overlooks the fact that in Florida, driver's license records are in fact public records.  See Layton v. Dept. of Hwy. Safety and Motor Vehicles, 676 So. 2d 1038, 1040 (Fla. 1st DCA 1996).  The photographs within are digitally stored and can even be sold to other entities by the Department of Highway Safety and Motor Vehicles (DHSMV).  See Image Data LLC, v. Sullivan, 735 So. 2d 725, 726 n. 2 (Fla. 5th DCA 1999).  Given that the driver's license information and photo are a public record, any illegality by Sheriff's deputies in retaining the physical license is beside the point.  The information, discoverable by wholly legal means, would have inevitably been available to police.  "Exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial."  Fitzpatrick v. State, 900 So. 2d 495, 514 (Fla. 2005) (quoting Nix v. Williams, 467 U.S. 431 446, (1984)).  Trial counsel acted properly in not objecting to the Defendant's DHSMV photo, as it was a public record and any objection to it would have been without merit.  Trial counsel is not required to make meritless objections to be deemed effective.  See Reed v. State, 875 So. 2d 415, 432 (Fla. 2004) (citing Strickland, 466 U.S. at 691).  The Defendant's first two objections to the phot[o], then, must be denied without hearing as facially insufficient at law.  See Kimbrough v. State, 886 So. 2d 965, 981 (Fla. 2004).

The Defendant's claim of an unduly suggestive identification presents a facially more challenging analysis.  He is correct in his statement that identification by a single photograph is at law unduly suggestive.  See Fitzpatrick, 900 So. 2d at 518.  But the Defendant only gives part of the test that the trial court would have had to apply were trial counsel to have raised the objection that the Defendant now wants.  He makes a conclusory statement that the identification was not shown "otherwise reliable."  But that is not the second part of the Fitzpatrick test.

In Fitzpatrick, 900 So. 2d at 518, that defendant challenged the use by police of a single photograph to effect the identification.  There, police showed a single photograph to the victim prior to showing him a full photographic array of six photos.  See id.  The court agreed that the single photo was suggestive but further considered the procedure used.  It stated that "a pretrial identification obtained from suggestive procedures is not per se inadmissible, but may be introduced into evidence 'if found to be reliable and based solely upon the witness'[s] independent recollection of the offender at the time of the crime, uninfluenced by the intervening

- 15 -

illegal confrontation.'"  Id. (quoting Edwards v. State, 538 So. 2d 440, 442 (Fla. 1989)).  The record before the Fitzpatrick court showed that the witness had seen the defendant for fifteen minutes, he was directly in front of the witness, five to ten feet away.  See Fitzpatrick, 900 So. 2d at 518.  The court found that this demonstrated an independent basis for the identification.

Here, Detective Robinson also demonstrated an independent basis for her identification.  She knew the Defendant as "Jimmy."  This name was given [to] her by the co-defendant.  Trial counsel twice objected to this identification and was overruled.  The Defendant motioned her to him with a wave.  She was driving her unmarked vehicle.  The Defendant came to the driver's side of her vehicle.  He engaged her in conversation.  She saw him take a bottle out of his pocket and handed him a twenty dollar bill.  She viewed the driver's license photo of the Defendant before the transaction.  She viewed it again after the transaction to confirm that she made contact with the Defendant.  The detective has training in identification of suspects.  She was sure of her identification.  In fact, she testified that "there [was] no mistake in [her] mind" that the Defendant is the one who sold her cocaine.

As in Fitzpatrick, the witness had a clear, close-up view of the Defendant at her car window, close enough to engage in conversation and make a physical hand-to-hand transaction.  She was absolutely sure of her identification and is trained in such procedures.  As Fitzpatrick demands, the identification in court was based not on the photograph but on the detective's independent on-scene recollections contained in the trial transcript.  The record therefore conclusively shows that the Defendant's claim as to the overly suggestive identification is without merit.  Counsel is not required to raise meritless motions or objections to be effective.  See Reed, 875 So. 2d at 432.  At any rate, trial counsel did raise two objections on other grounds and was overruled.  As the record shows that any motion to suppress the identification would not have been granted, the Court may summarily deny these claims.  See Kimbrough, 886 So. 2d at 981.

(Respondent's Exhibit 8E, pp. 2-5) (record citations omitted).

A defendant possesses a due process right to exclude identification testimony

resulting from an unnecessarily suggestive identification procedure conducive to

irreparable mistaken identification.  Manson v. Brathwaite, 432 U.S. 98, 104 (1977);

Stovall v. Denno, 388 U.S. 293, 301-02 (1967).  A suggestive identification procedure,

without more, results in no due process violation.  Neil v. Biggers, 409 U.S. 188, 198-99

(1972).  Rather, the identification procedure must be both unnecessarily suggestive and

create a substantial risk of misidentification.  Johnson v. Dugger, 817 F.2d 726, 729

(11th Cir. 1987).  "Where suggestive pretrial confrontations may have created a

substantial likelihood of irreparable misidentification at trial, the core question is whether

under the totality of the circumstances, the in-court identification was reliable."  Jones v.

Newsome, 846 F.2d 62, 64 (11th Cir. 1988).  "Reliability is the linchpin in determining

the admissibility of identification testimony . . . ."  Brathwaite, 432 U.S. at 114.  "Factors

to be considered in determining whether the identification was reliable include:  (1)

opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of

certainty; and (5) length of time between the crime and the identification."  United States

v. Diaz, 248 F.3d 1062, 1102 (11th Cir. 2001) (citing Biggers, 409 U.S. at 199).

        The state post-conviction court reasonably determined that the totality of the

circumstances renders Detective Robinson's identification reliable.  Detective Robinson

both spoke directly to Grisnold and purchased cocaine directly from him in a

hand-to-hand transaction through the driver's side window of her vehicle.  Detective

Robinson had the opportunity to observe Grisnold as he stood immediately outside of

her vehicle and she unequivocally testified that Grisnold was the person who sold her

the cocaine.  She identified Grisnold both by viewing him personally and from the

driver's license photograph after the drug transaction.  See Diaz, 248 F.3d at 1102;

Biggers, 409 U.S. at 199).  Grisnold fails to establish that Detective Robinson's

identification testimony resulted from an unnecessarily suggestive identification procedure conducive to irreparable mistaken identification. <u>Brathwaite</u>, 432 U.S. at 104; <u>Stovall</u>, 388 U.S. at 301-02.

Because Grisnold fails to establish a due process violation resulting from the identification procedure, he cannot sustain an ineffective assistance of counsel claim based on trial counsel's failure to file a motion to suppress the identification or the driver's license photograph. To obtain relief on this ineffective assistance claim, Grisnold must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that he has a meritorious Fourth Amendment claim, and (3) that a reasonable probability exists that a different verdict would have resulted absent the excludable evidence. <u>Zakrzewski v. McDonough</u>, 455 F.3d 1254, 1260 (11th Cir. 2006) (<u>citing</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986)).

Grisnold fails to establish a meritorious Fourth Amendment claim. Even assuming, <u>arguendo</u>, that trial counsel performed deficiently by failing to file a motion to suppress, Grisnold fails to demonstrate that absent counsel's alleged error, the jury would have acquitted him. <u>See</u> <u>Zakrzewski</u>, 455 F.3d at 1260. Because Grisnold fails to show that the state court's rejection of this ineffective assistance claim resulted in an unreasonable application of <u>Strickland</u>, ground three warrants no federal habeas relief.

**Ground Four**

Grisnold contends that trial counsel rendered ineffective assistance by failing to file a motion to suppress the cocaine that Detective Robinson purchased from him during the undercover drug transaction. He argues that he was charged with selling the

cocaine on January 17, 2003, but that the cocaine admitted into evidence at trial was

not packaged until January 23, 2003.  Grisnold claims that, if counsel had filed a motion

to suppress, the prosecution "would not have been able to show how the police kept

track of the substance delivered and would not have been able to show that the

substance delivered [and] purchased from [Grisnold] according to the purchasing

officer's identification, was the cocaine introduced at trial."

Again the state post-conviction court in denying relief on this claim in Grisnold's

Rule 3.850 motion relied upon the State's response to Grisnold's Rule 3.850 motion,

adopting the response to this claim in its entirety.  The State argued:

> The Defendant's fourth claim of error is that trial counsel failed to move to suppress the contraband narcotics in this case and allowed its introduction at trial.  The Defendant's claim as to both subparts is essentially that the State failed to prove a proper chain of custody and that trial counsel did not raise objections based on that.  Precisely, Defendant contends that case agent Detective Kirkpatrick did not "package" the contraband for six days following the Defendant's arrest.  He then makes a conclusory claim that a motion to suppress on this fact would have entitled the Defendant to exclusion of the contraband as the State would not have been able to prove that its trial exhibit was that cocaine that was taken from the Defendant.

> Here the record below and relevant case law make clear that the Defendant's position lacks merit.  For trial counsel to have successfully challenged the chain of custody, he would have had to prove that the six-day lapse alleged by the Defendant created a probability that the evidence was somehow tampered with.  See Floyd v. State, 850 So. 2d 383, 399-400 (Fla. 2002); see also State v. Taplis, 684 So. 2d 214, 215 (Fla. 5th DCA 1996).  He cannot and his claim should be denied.

> In Floyd, 850 So. 2d at 399, that defendant raised an objection to a break in the chain of custody between the time a bullet was taken into evidence and presented to the [Florida] Department of Law Enforcement for examination.  Similarly [sic] to the Defendant's complaints here, in Floyd, the State was unable to precisely track the evidence from police custody to FDLE and back.  See id.  Here, of course, the Defendant is not alleging

tampering per se; rather, he merely alleges that the State would have been unable to authenticate the exhibit. But as the Floyd court found, "[a] bare allegation by a defendant that a chain of custody has been broken is not sufficient to render relevant physical evidence inadmissible." Floyd, 850 So. 2d at 399; see also Terry v. State, 668 So. 2d 954, 959 n.4 (Fla. 1996). Further, the State provided testimony from Detective Kirkpatrick that the cocaine placed in evidence at trial was the same cocaine that the detective received from the undercover officer at the time of this incident. The admission of relevant physical evidence is a matter of discretion for the trial court; moreover, all relevant evidence is admissible unless otherwise provided by law. See Floyd, 850 So. 2d at 399; see also Fla. Stat. § 90.402 (2005). The Defendant cannot show that the six-day lapse, assuming there was one, between collection and "packaging" amounts to a probability of evidence tampering, given that even by the Defendant's own interpretation the case agent would have maintained the evidence in his control over that timeframe. Here, the Defendant, as in Floyd, merely articulates a possibility that the evidence is not the right evidence, and that is not the standard this Honorable [C]ourt should apply. See Floyd, 850 So. 2d at 399-400.

Since the Defendant cannot show a probability, as opposed to a merely possibility, that the cocaine was tampered with, or that it is not in fact the cocaine taken from the Defendant at his arrest, any motion to suppress filed by trial counsel would have been without merit. Counsel is not required to file meritless motions to be deemed effective. See Reed, 875 So. 2d at 432. As both the law and the record show conclusively that the Defendant is not entitled to relief, this Honorable Court may deny the Defendant's fourth claim of error in full without [a] hearing. See Kimbrough, 886 So. 2d at 981.

(Respondent's Exhibit 8E, pp. 5-6) (record citations omitted).

Detective Robert Kirkpatrick testified that he worked with Detective Robinson on January 17, 2003, the night of the undercover transaction. Immediately after Detective Robinson conducted the transaction she met with Detective Kirkpatrick and gave him the cocaine she had purchased from Grisnold. Detective Kirkpatrick locked the cocaine

in an evidence locker, retrieved the cocaine from the evidence section of the Polk

County Sheriff's Office, and delivered it to the prosecutor.[4]

  (Respondent's Exhibit 2, Vol. III, pp. 43-46).

Florida law requires that a defendant seeking to bar the introduction of otherwise

relevant evidence based on a break in the chain of custody must demonstrate a

probability that the evidence was tampered with.  Floyd v. State, 850 So. 2d 383, 399

(Fla. 2002) (citing State v. Taplis, 684 So. 2d 214, 214 (Fla. 5th DCA 1996)).  Neither an

unsupported allegation that the chain of custody was broken nor an unsupported

allegation of a mere possibility of tampering is sufficient to render relevant physical

evidence inadmissible.  Floyd, 850 So. 2d at 399; Davis v. State, 788 So. 2d 308, 310

(Fla. 5th DCA 2001).

Grisnold fails to allege that Detective Kirkpatrick or any other person tampered

with the cocaine.  The record offers no support for Grisnold's conclusory and

unsubstantiated allegation that if counsel had filed a motion to suppress, the

prosecution could not have demonstrated the chain of custody of the drug evidence,

resulting in suppression of the cocaine at trial.  Absent evidence of tampering, counsel

had no basis to file a motion to suppress as Grisnold suggests.  Grisnold fails to meet

his burden of proving that the state court's rejecting this claim resulted in either an

unreasonable application of Strickland or an unreasonable determination of the facts.

---

[4]  The chain of custody is established at Respondent's Exhibit 2, Vol. III, pp. 43-46.

**Ground Five**

Grisnold contends that trial counsel rendered ineffective assistance by failing to call as a witness at trial the confidential informant that accompanied Detective Robinson on the undercover drug transaction.  He argues that the informant was available as a witness at the time of trial, that the informant was acquainted with him, and that the informant, if called to testify, "could not have given any conclusive identification of Petitioner."  He argues that the absence of an identification by the informant results in an acquittal.

The state post-conviction court rejected this claim in Grisnold's Rule 3.850 motion after an evidentiary hearing:

> Trial counsel testified that once the CI's identity was disclosed, he tried unsuccessfully to subpoena her for deposition in an effort to determine what testimony she was likely to give if called.  Trial counsel also testified that there were one or more outstanding warrants for [the] CI's arrest and he concluded that it was unlikely he would succeed in deposing her or otherwise being [sic] able to contact her.  According to information provided to trial counsel by the State, the CI's testimony would be expected to corroborate that of the State's identity witness and, therefore, would be favorable to the State and not the Defendant.  Further, trial counsel learned that the CI was an unsavory character and would be easily impeachable.  Taking all that into consideration, along with giving up first and last closing argument if the CI was called by the [d]efense, trial counsel filed a motion in limine to prohibit the State from calling the CI in its case-in-chief and made the strategic decision to go to trial without further efforts to call the CI to testify for the Defendant.  So long as an attorney's trial strategy is objectively reasonable under the totality of the circumstances, his conduct will not be deemed deficient.  <u>Strickland</u>, 466 U.S. at 681.  The Court finds that trial counsel's decision not to call the CI at trial was part of a reasonable strategy and thus the first prong of <u>Strickland</u> has not been met.  Moreover, the Defendant did not produce the CI to testify at the evidentiary hearing and, therefore, the Defendant produced no evidence that even if trial counsel's decision was somehow deficient, that Defendant was thereby prejudiced.  Because Defendant has

        failed to present evidence to satisfy either prong of <u>Strickland</u>, [this] claim
is DENIED.

(Respondent's Exhibit 8K, p. 4).

        The record supports the state post-conviction court's rejection of this claim.  Trial

counsel testified at the evidentiary hearing that he twice tried to depose the informant

but she failed to appear.  (Respondent's Exhibit 8I, pp. 49-50)  Counsel testified that

when he asked Grisnold about the informant Grisnold denied knowing her.  Counsel

further testified that the prosecutor advised him that the informant's testimony would

corroborate Detective Robinson's testimony and that he made a strategic decision not to

call the informant as a witness to preserve having the first and last closing argument.[5]

---

[5] Counsel testified on direct examination at the evidentiary hearing:

A:      . . . I think I take [the prosecutor's] word for it if she says this witness is
good for the State. [The informant's] testimony would essentially mirror
that of law enforcement.  I think I can take that to the bank.  So - so I - I
did heed what she told me - the impression I developed from what - from
what she told me [and] concluded that [the informant]'s not going to help
us.  And if the State's not going to use her anyways she really is not
going to be important on - on the very - very remote chance that she
might help us I - of course I didn't think she would help us based on what
the State represented to me.

Based on the very - very remote chance that her testimony might be
favorable[,] I also factored in giving up first and last closing in order to call
a witness who emitted [sic] impeachable.  She had a record as long as
your leg.  So the chance of her testimony being favorable was very
remote based on what [the prosecutor] told me.  I would be giving up first
and last closing which I don't do unless the witness has [something] very
favorable to say.  And she's extremely impeachable so I didn't see any
point in pursuing that at all, giving up first and last closing to try to call a
witness who probably would not be favorable and is extremely
impeachable.

. . .

Q:      So your communications then with [Grisnold] about calling [the
confidential informant] as a witness though did he ever indicate he
desperately wanted her called, didn't care to have her called, had any
position on between?

(continued...)

Under Florida law, "the failure to call witnesses can constitute ineffective assistance of counsel if the witness may have been able to cast doubt on the defendant's guilt, and the defendant states in his [post-conviction] motion the witnesses' names and the substance of their testimony, and explains how the omission prejudiced the outcome of the trial." Marrow v. State, 715 So.2d 1075 (Fla. 1st DCA 1998). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted).[6]  Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983).  The reasonableness of counsel's challenged conduct on the facts of the case viewed as of the time of counsel's conduct decides an ineffectiveness claim.  Strickland v. Washington, 466 U.S. at 690.

Grisnold speculatively asserts that the confidential informant would have given no conclusive evidence of Grisnold's identity, arguably refuting Detective Robinson's testimony that Grisnold was the person from whom she purchased the cocaine.  Even if

_____

[5](...continued)
A:      I would describe his attitude as ambivalent.  I - I - his attitude was I don't
        know her, I don't know anything about her, I don't care.

(Respondent's Exhibit 8I, pp. 53-54, 67-68).

[6] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

counsel had called the confidential informant as a witness, no evidence shows that the informant would have testified as Grisnold hypothesizes.[7]  Grisnold's testimony at the evidentiary hearing refutes his allegation that the informant "was acquainted with [him]."[8]  Grisnold fails to demonstrate that counsel's performance fell outside the bounds of reasonable professional judgment.  Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (internal citation omitted) ("[W]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision."); Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) (counsel cannot be deemed incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy") (quoting Darden v. Wainwright, 477 U.S. 168 (1986), cert. denied, 531 U.S. 1204 (2001)).  Grisnold fails to support his speculative contention that the informant's testimony would have resulted in his acquittal and fails to meet either Strickland's deficient performance requirement or prejudice requirement to support a claim of ineffective assistance.  Strickland, 466 U.S. at 691-92.  The state post-conviction court neither unreasonably applied Strickland nor unreasonably determined the facts in rejecting this claim.

---

[7]  Grisnold presents no affidavit from the confidential informant attesting to the facts that Grisnold speculatively asserts she would have asserted at trial.  See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

[8]  Both trial counsel and Grisnold repeatedly testified at the evidentiary hearing that Grisnold did not know the confidential informant.  (Respondent's Exhibit 8I, pp. 51, 67-68; Exhibit 8J, pp. 105-06, 110, 112)

Accordingly, Grisnold's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

The clerk shall enter a judgment against Grisnold and close this action.

ORDERED in Tampa, Florida, on September 13, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE